**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Sullivan, et al., | No. CV-15-00231-TUC-DCB |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

The Court denies the Defendant's Motion for Summary Judgment, except for Count Two, and denies Plaintiffs' Crossmotion for Summary Judgment on causation. The case shall proceed to trial on Counts One and Three, with the Joint Pretrial Order to be filed with the Court within 30 days of the filing date of this Order.

Plaintiffs allege that on December 16, 2013, Glenn Hunter, MD, a vascular surgeon, provided medical treatment at the Southern Arizona Veterans Affairs Health Care System ("SAVAHCS") in Tucson, Arizona, to Plaintiff William Sullivan (Mr. Sullivan) related to an abdominal aortic aneurism ("AAA") repair. Plaintiffs allege Dr. Hunter breached the standard of care by recommending and performing an open surgery repair (OSR) of the AAA rather than an endovascular repair (EVAR) of the AAA. An OSR of an AAA involves an incision in the abdomen to expose the aorta, clamping the iliac arteries and the aorta, opening the aneurysm, and sewing in a graft. EVAR involves making an incision and passing catheters and wires through the iliac arteries into the aorta, and deploying a device in the location of the aneurysm. The Plaintiffs allege that

the Dr. Hunter negligently chose to do the more dangerous and invasive OSR procedure instead of EVAR, and this proximately caused Mr. Sullivan's paraplegia and Plaintiff Cindy Sullivan's loss of consortium.

Plaintiffs' First Amended Complaint against the United States alleges counts of medical negligence, negligence-lack of informed consent, and battery under the Federal Tort Claims Act (FTCA). The United States can be sued only to the extent that it has waived its sovereign immunity, and the FTCA provides a limited waiver of the federal government's sovereign immunity for the common law torts of its officers and employees. *United States v. Orleans*, 425 U.S. 807, 813-14 (1976). The United States is liable under the FTCA under circumstances where, as a private person, it would be liable under "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 543 (9th Cir. 1987). Arizona law governs the existence and extent of Defendant's liability, if any, in this action.

The Defendant seeks summary judgment because spinal cord ischemia, the paralysis at issue here, is an inherent risk of both an OSR and EVAR. Prior to the procedure, Plaintiffs had been informed of this risk. "Summary judgment is warranted because Plaintiffs have failed to come forth with competent admissible expert testimony as to two independent essential elements of their medical malpractice and informed consent claims – breach of the standard of care and proximate causation. As to the medical battery claim, Plaintiffs have failed to plead the elements of battery, and failed to produce admissible evidence of battery. Because Mr. Sullivan's claims fail, Cynthia Sullivan's derivative claim for loss of consortium also fails." (Ds MSJ (Doc. 115) at 2.)

On summary judgment, the moving party is entitled to judgment as a matter of law if the Court determines that in the record before it there exists "no genuine issue as to material fact." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, but is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986). In determining whether to

grant summary judgment, the Court views the facts and inferences from these facts in the light most favorable to the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. *Id.* at 248. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the non-moving party. *Id.*

The moving party is under no obligation to negate or disprove matters on which the non-moving party bears the burden of proof at trial. *Id.* at 325. Rather, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Id.* If the moving party meets its burden, it then shifts to the non-moving party to 'designate 'specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed.R.Civ.P. 56(e)). To carry this burden, the party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers. *Anderson*, 477 U.S. at 252. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

This trilogy of 1986 cases opened the door for the district courts to rely on summary judgment to weed out frivolous lawsuits and avoid wasteful trials. *Rand v. Rowland*, 154 F.3d 952, 956-957 (9th Cir. 1998); 10A Charles A Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2727, at 468 (1998). As explained in *Celotex*: "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The Judge's role on a motion for summary judgment is not to determine the truth of the matter or to weigh the evidence, or determine credibility, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 252.

### **Count One: Medical Malpractice**

Defendant seeks summary judgment on Count One, the medical malpractice claim, as a matter of law because Plaintiffs have failed to support the claim with any evidence. Medical malpractice claims are governed by Arizona statute, A.R.S. § 12-561(2).[1] *Bailey-Null v. ValueOptions*, 209 P.3d 1059, 1066 (Ariz. App. 2009). "A health care provider bears the duty 'to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider' in the same profession or class and under similar circumstances." (Ds MSJ (Doc. 115) at 5 (quoting A.R.S. § 12-563(1)). In a medical malpractice case this is known as the standard of care. *Smethers v. Campion M.D.*, 108 P.3d 946, 949 (Ariz. App. 2005).

Under Arizona law, a plaintiff must establish this standard by expert medical testimony, unless "grossly apparent" to the layman. *Harvey v. Kellin*, 115 Ariz. 496, 499, 566 P.2d 297, 300 (1977). He must also prove through expert medical testimony that the provider's failure to discharge this duty constituted the proximate cause of injury, A.R.S. § 12-563(2), unless the connection is "readily apparent" to the trier of fact. *Barrett v. Harris*, 86 P.3d 954, 958 (Ariz. App. 2004); *cf. Kreisman v. Thomas*, 469 P.2d 107, 110 (Ariz. App. 1970) (causation must be probable and not merely possible).

A plaintiff must prove "causation-in-fact," i.e., prove that his injury "would not have occurred 'but for' the defendant's conduct." *Ontiveros v. Borak*, 667 P.2d 200, 205

---

[1] Actions arising from a licensed health care provider's alleged "negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services, nursing services or other health-related services or for the rendering of such health care, medical services, nursing services or other health-related services, without express or implied consent . . .."

(Ariz. 1983) (en banc). A plaintiff must also prove proximate cause: "that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Saucedo ex rel. Sinaloa v. Salvation Army*, 24 P.3d 1274, 1278 (Ariz. App. 2001).

Typically breach and causation are questions of fact, *Fehribach v. Smith*, 22 P.3d 508, 512 (Ariz. App. 2001), but when evidence does not establish a causal connection beyond mere speculation or where reasonable persons could not differ on the inference derived from the evidence, then the Court may properly rule by directed verdict or summary judgment, *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz. 1990). Here, Defendant urges that the Court rule on summary judgment because Plaintiffs fail to offer evidence to prove any breach in the standard of care or that the breach proximately caused Mr. Sullivan's spinal cord injury.[2]

Defendants argue that the only evidence that Dr. Hunter breached the standard of care was disclosed late during the deposition of Plaintiffs' standard of care expert, Dr. Hirschfeld. Defendant asserts Dr. Hirschfeld's testimony regarding the extent of thrombus is precluded from being used on summary judgment or at trial. Fed. R. Civ. P.37(c)(1). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." *Id.*

The Plaintiffs respond that their standard of care expert, Dr. Hirschfeld, opined in his original report that there were no contraindications for EVAR. (PSOF (Doc. 123) ¶58.) The Plaintiffs submit that by 2013, EVAR was recognized as superior and preferred to open AAA surgery. *Id.* ¶22 (citing Hirschfeld Depo. (Ex. 13) at 19:10-

---

[2] To the extent the Plaintiffs may have alleged a claim of negligent supervision, it is dismissed. The Defendant seeks summary judgment because the Plaintiffs offer no evidence relevant to prove negligent supervision and argue that this claim is barred by the discretionary function exception to liability under the FTCA. Plaintiffs' do not respond to this argument and do not object to summary judgment being granted on this claim. It is not clear to the Court that such a claim is brought, but to the extent alleged- it is dismissed.

20:14). *but see* (D Resp. SOF (Doc. 133) ¶ 22 (countering that Plaintiffs SOFs omit qualification by Dr. Hirschfeld that EVAR is preferred absent contradictions) and (citing Hunter Depo. (PSOF Ex. 1) at 23:4-11 (noting some surgeons do only EVAR and others are more selective because there are problems associated with EVAR), (citing Kraiss Depo. (DSOF Ex. 9(A) at 13 (describing OSR as required for anatomical issues at proximal neck that might result in loss of seal, Type 1 endoleak and rupture)).

Dr. Hunter decided on OSR for the following reasons: 1) excessive thrombus and/or atheromatous debris in Mr. Sullivan's aorta, (PSOF (Doc. 123) ¶ 47 (citing Hunter Depo. at 29, 52, 66), and left renal artery, *id.* ¶ 51 (citing Hunter Depo. at 66), and 2) Mr. Sullivan's young age of 72,[3] *id.* ¶¶ 47,56 (citing Hunter Depo. at 66 (explaining OSR patients do better long term).

Defendant's standard of care witness, Dr. Kraiss, also a vascular surgeon, believes there were two EVAR contraindications: 1) excessive atheroma/thrombus in Sullivan's aorta, and 2) the proximal neck of Sullivan's aorta was "marginal" for endografting and EVAR would have increased risk for graft migration and possible loss of seal. (DSOF (Doc. 119) ¶¶ 73-74.) The Plaintiff objects to Dr. Kraiss' second position because there is no evidence that this was a contradiction considered by Dr. Hunter.[4] To be exact, Dr. Hunter simply did not include this "marginal" reason as a contradiction for EVAR. This is not the same as an admission that the shortness of the proximal neck of Mr. Sullivan's aorta was not considered in deciding against EVAR.

Contrarily, the Plaintiff's expert, Dr. Hirschfeld, in his deposition testified that in his opinion there was no significant problem with the proximal neck of the aorta and no absolute or relative contradiction for Dr. Hunter to exclude Mr. Sullivan for EVAR. Relying on reported measures by Endologix and measurements in his head, Dr. Hirschfeld testified the aortal neck was "at least 3 centimeters" not 15.2 millimeters long as Defendant's experts' posited. (DSOF (Doc. 133) ¶ 66.) Defendant objects to Dr.

---

[3] (Ps Resp. (Doc. 122) at 2.)
[4] Dr. Zachery Taylor (Z. Taylor), the attending vascular surgeon, also opined a reason for EVAR would be the relatively short aortic neck of the patient. (DSOF (Doc. 133) ¶ 47.)

- 6 -

Hirschfeld's deposition testimony as a new opinion and complains that the basis for this allegedly new opinion was not timely disclosed. The Court finds that Dr. Hirschfeld's opinion is offered in rebuttal to Defendant's experts' opinions that Mr. Sullivan's proximal aortal neck was marginally acceptable for EVAR. This opinion is not precluded, except for testimony at trial of the exact measurements supporting this opinion are not admissible because they were not timely disclosed in any report, at his deposition otherwise.[5] Likewise, the Society for Vascular Surgery Practice Guidelines (SVS Guidelines) are precluded in the Plaintiffs' case in chief, Fed. R. Civ. P 37(c)(1), but are sufficient for Dr. Hirschfeld's expert opinion to survive *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 580 (1993). He may testify as to his opinion but may not testify to specific SVS Guidelines as supporting reasons for or as data he considered in forming his opinion. Fed.R.Civ.P. 26(a)(2)(B), 37(a)(1), Fed.R.Civ.P 703, 705.

According to the Plaintiffs, Dr. Hunter relied on a pre-op CT that was misread. (PSOF (Doc. 123) ¶¶ 36, 48). The CT report prepared by VA Radiologist, Dr. Cohen, M.D., found "[s]ignificant atherosclerotic plaque and/or thrombus . . . involving the aorta at predominantly the levels of the aneurysm," *id.* ¶ 32, and "tortuosity of the aorta causes limitation in accurate assessment on the axial images . . .," *id.* ¶34. The Plaintiffs present a radiology/neuroradiology expert, William Taylor (W. Taylor), M.D., who opines that if properly read, the CT reflected the extent of thrombus was less than 35% and probably less than 25%. *Id.* ¶ 67. Defendant objects that only a vascular surgeon is qualified under Arizona to opine on the standard of care applicable to Dr. Hunter and because Plaintiffs failed to timely disclose Dr. W. Talyor as an expert. (Ds MSJ (Doc 115) at 8.) Dr. W. Taylor is qualified to challenge the accuracy of Dr. Cohen's radiology report, which Dr. Hunter relied on and agreed with based on his own review of the CT. *Id.* ¶ 59 (reflecting Hunter said he read and interpreted the 9/11/2013 CT himself and Hunter's pre-op note mirrors Dr. Cohen's report). Dr. W. Taylor does not qualify as a standard of

---

[5] Dr. Hirschfeld mistakenly proposed disclosing his measurements at trial. (DSOF ¶66 (citing PSOF Ex. 13 (Hirschfeld Depo.) at 55.))

- 7 -

care expert relevant to Dr. Hunter except to the extent the two share professional expertise in radiology. *See Gaston v. Hunter,* 588 P.2d 316, 346 (Ariz. App. 1978) (expert must have "more than a casual familiarity with the specialty of the defendant physician"). Plaintiffs fail to respond to the Defendant's charge that Dr. W. Taylor was not timely disclosed as an expert witness, therefore, he is precluded from testifying pursuant to Fed. R. Civ. P. 37(c)(1).

Finally, the Defendant asserts that Mr. Sullivan suffered an injury that was an inherent risk of the AAA repair that occurs in the absence of negligence and, therefore, the Plaintiffs cannot prove that any act or omission by Dr. Hunter "'produced the injury, in whole or in part, and without which the injury would not have occurred.'" (D's Reply (Doc. 131 ) at 6.) Defendant relies on Arizona law "that no presumption of negligence arises from the mere fact of unsuccessful treatment" and "that absent negligence by the physician there is no malpractice when the plaintiff suffers an adverse result which is an inherent risk of the procedure performed." *Gaston,* 588 P.2d at 50.

According to the Defendant's theory of the case, the choice between surgical techniques did not influence the incidence or risk of paraplegia because spinal cord ischemia is an inherent risk of both OSR and EVAR. But "[t]he linchpin for summary judgment in this case is this: no scintilla of evidence exists that had Dr. Hunter performed EVAR, Mr. Sullivan's spinal cord injury would have been avoided."

Plaintiffs' theory of the case is that OSR was a more risky procedure, in part more risky, because it necessitated a longer post-operative intubation recovery period. The ventilation/ intubation prevented doctors from discovering the spinal cord ischemia/ paraplegia until it was too late to treat it. Defendant challenges the admissibility of Dr. Hirschfeld's opinion to this effect contained in his rebuttal report as a late disclosure of a new opinion. The Court finds that Dr. Hirschfeld timely offered this opinion in rebuttal to Defendant's experts' opinions that there were contradictions against EVAR and it was not negligent for Dr. Hunter to perform OSR. In his original report, Dr. Hirschfeld opined that EVAR would have eliminated the potential for the alleged negligent inter-

- 8 -

operative complications from Dr. Hunter's alleged failure to use suprarenal clamping to protect the kidneys and renal arteries, (Hirschfeld 4/17/17 Report (Doc. 123-2) at 8), and the alleged unnecessary re-implant of the inferior mesenteric artery, *id.* at 8. In his original report, Dr. Hirschfeld opined that EVAR would have reduced risk of "extreme postoperative hemodynamic instability and fluid shifts and postoperative critical illness, with hemodynamic instability, likely resulted in the anterior spinal ischemia/occlusion and infarct of the conus of the spinal cord, leading to Mr. Sullivan's paraplegia." *Id.* at 9.[6]

In his rebuttal report, Dr. Hirschfeld clarified that he agreed with Defendant's experts that the choice of surgical technique does not influence the incidence or risk of paraplegia, but explain his opinion was that OSR in comparison to EVAR dramatically increased the risk of a critical post-operative clinical status, including heavy sedation, ventilation and intubation. (Hirshfeld Rebuttal 11/21/2017 Report (Doc. 123-3) at 4.) This increases the risk of paraplegia because delay of more than 24 hours significantly impacts clinical outcomes for paraplegia and a critical post-operative status, especially heavy sedation, ventilation and intubation, delays diagnosis of paraplegia. *Id.* Here, allegedly the paralysis occurred on day three but was not diagnosed until day six when Mr. Sullivan's post-operative critical status improved to the point that he was placed on a weaning protocol from the ventilator and extubated.

Because the Court finds that Plaintiffs' standard of care expert, Dr. Hirschfeld's testimony is admissible rebuttal evidence and not precluded for late disclosure, the Plaintiffs present more than a scintilla of evidence to dispute both material questions of fact regarding the standard of care and causation.

### **Count Two: Informed Consent**

"A plaintiff alleging lack of informed consent must show two types of causation:

---

[6] These disclosures were made prior to Dr. Hirschfeld's deposition on April 28, 2018. "The purpose of Rule 26 is to give opposing counsel adequate notice before the expert's deposition and to prevent unfair surprise at trial. (Ps Resp. (Doc. 122) at 15 (citing *Breslerv. Wilmington Trust Co,* 855 F.3d 178, 210 (4th Cir. 2017); *Ciomber v. Coop. Plus, Inc.,* 527F.3d 635, 642 (7th Cir. 2008); *Minebea Co. v. Papst,* 231 F.R.D. 3, 5-6 (D.C. 2005)).

1) adequate disclosure would have caused the plaintiff to decline the treatment, and 2) the treatment proximately caused injury to the plaintiff." (Ps Resp. (Doc. 122) at 17) (citations omitted). "To prove informed consent, a plaintiff must offer medical testimony by physicians. . . Here, Dr. Hunter provides the necessary physician testimony regarding his understanding of the relative benefits of EVAR v. OSR." *Id.* at 18 (citing. *Peacock v. Samaritan Health Service*, 765 P.2d 525 (Ariz. App. 1988). .

The Plaintiffs' theory is that because Dr. Hunter misunderstood the relative benefits of EVAR compared to OSR and/or did not understand the post-operative risk from OSR, he necessarily did not "fully inform his patient of the risks inherent in the surgery or treatment to which [Mr. Sullivan] may have consented." *Id.* at 17 (citing *Duncan v. Scottsdale Med. Imaging*, 70 P.3d 435 (Ariz. 2003), *Mink v. Univ. of Chicago*, 460 F. Supp. 713, 716 (N.D.Ill. 1978)).

Plaintiffs' informed consent claim fails because they present no supporting evidence for it. Dr. Hunter has not admitted to failing to inform Plaintiffs, and Plaintiffs fail to present any expert testimony that Dr. Hunter's informed consent breached the standard of care. The Court grants summary judgment for Defendants on Count Two.

### Count Three: Battery

"A battery occurs under Arizona law when a physician performs a procedure to which the patient has not consented." (Ps Resp. (Doc. 122) at 18 (citing *Duncan v. Scottsdale Med. Imaging*, 70 P.3d at 439; *Hales v. Pittman*, 576 P.2d 493, 498 (1978) ("[t]he law is well established that a health care provider commits a common law battery on a patient if a medical procedure is performed without the patient's consent.")) To the extent Plaintiffs' battery claim is based on Count Two's alleged failure to inform, it fails. Plaintiffs also assert that "Mr. Sullivan never consented to a second surgery – the left mesenteric artery repair." *Id.* There is a question of fact to be decided at trial as to whether the left mesenteric artery repair was a second surgery or was "an additional procedure" required "to maintain blood flow" covered by the medical consent form signed by Mr. Sullivan. (Ds Reply (Doc. 131) at 11 (citing DSOF (Doc. 119) ¶¶ 34-36)).

If so, Count Three fails like Count Two.

## **Conclusion**

Plaintiffs' Cross Motion for Summary Judgment on causation is denied for the same reasons the Court denies Defendant's Motion for Summary Judgment. Both dispositive motions fail because there are material questions of fact in dispute. The case shall proceed to trial, except for Count Two.

**Accordingly,**

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment (115) is GRANTED IN PART on Count Two and DENIED in all other parts.

**IT IS FURTHER ORDERED** that to the extent the Plaintiffs may have alleged a claim of negligent supervision, it is dismissed.

**IT IS FURTHER ORDERED** that the Plaintiffs' Cross Motion for Summary Judgment on Causation (Doc. 128) is DENIED.

**IT IS FURTHER ORDERED** that within 30 days of the filing date of this Order, the Parties shall file the Joint Proposed Pretrial Order. *See* Attached.

Dated this 16th day of November, 2018.

Honorable David C. Bury
United States District Judge

**FORM OF PRETRIAL ORDER**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

|  |  |  |
|---|---|---|
| Plaintiff, | ) ) ) ) | |
| v. | ) ) ) ) ) ) | CV     TUC DCB<br><br>**JOINT PROPOSED PRETRIAL ORDER** |
| Defendant. | ) ) | |

(Although the text of the pretrial order appears in single space, the actual order submitted by the parties must be double spaced and conform in all other respects to the Local Rules.)

The following are pretrial proceedings in this cause as agreed to by the parties and approved by the Court:

I. NATURE OF ACTION
This is an action for: (Short concise statement of the case, including the nature of the action and the relief sought.)

II. STATEMENT OF JURISDICTION
Statement of jurisdiction: (state the claims and cite the statutes which give this Court jurisdiction over each claim.)

III. CONTESTED ISSUES OF LAW/FACT
State the ultimate issues of fact and law which must be decided at trial. State only the issues of fact and law necessary and material for a verdict in this case. Each issue must be stated separately and specifically.

IV. LIST OF EXHIBITS

Each party shall list the exhibits it intends to offer at trial.

V. LIST OF WITNESSES

Each party shall list the witnesses it intends to call at trial.

VI. JURY TRIAL or BENCH TRIAL

The parties shall state whether the trial is a jury or bench trial.

For a Jury Trial

At the Pretrial Conference, the Court will direct the parties to file proposed voir dire, objections to exhibits, deposition testimony, stipulated jury instructions, stipulations, counsel's additional proposed jury instructions, motions in limine, and trial memoranda 20 days prior to trial. Any opposition shall be filed five days thereafter.

For a Bench Trial

At the Pretrial Conference, the Court will direct the parties to file trial briefs, objections to exhibits, motions in limine, stipulations, and proposed findings of fact and conclusions of law 20 days prior to trial. Any opposition shall be filed five days thereafter.

VII. PROBABLE LENGTH OF TRIAL

Each party shall identify the estimated length of time it will take to present its case.

**VIII. CERTIFICATION**

**The undersigned counsel for each of the parties in this action do hereby approve and certify the form and content of this proposed Joint Pretrial Order.**

_____        _____
Attorney for Plaintiff                                Attorney for Defendant